Please write the letter of permission to back the testimony. Please be seated. Thank you. Will the clerk please call the next case. 116-1968 Cleared Meal Systems, Inc. v. Victor Santana That is correct, Your Honor. It is part of the record. It is page 98. Okay. That's what we wanted to verify for the record. Thank you. Thank you. My name is Robert Lewkey, and I represent the College of Preferred Meal Systems, Inc. May it please the Court. And, Counsel, well, here's an interesting case. I'm here to tell you that the Commission's decision is against the manifest weight of the evidence, and nobody knows that standard better than you gentlemen. And it's meant to be a high standard, but it's not meant to be unachievable. And as a reviewing court, when the Commission makes a mistake, or if there isn't sufficient evidence in the record, or if the opposite conclusion is clearly apparent, then we can reverse the Commission's decision. Now, in this circumstance, the petitioner goes to U.S. Health Force January 14, 2013. Gives a history of an accident January 9, 2013. I hurt my groin. I hurt my hamstring. That's the history he gives. He's treated for that. No mention of any back accidents. No mention of any back symptoms. No back diagnosis, no back treatment. Goes back to U.S. Health Force a few days later, January 17, 2013. Same history. What did you hurt? I hurt my groin. I hurt my hamstring. Now, he's there to get the best treatment he can. He wants to be absolutely candid to his treating physicians. If something hurts, he's going to tell them. No mention of any back symptoms. Well, let me just hold you on that for a second, because maybe you're referring to the arbitrator, but let me ask you this. The commission, unlike the arbitrator who reasoned that the claimant did not report back pain until March 5, 2013, the commission specifically found reference to lower back complaints in the U.S. Health Works medical records as early as January 14, 2013, where a neck and back injury is referenced in the history section, and on January 24, 2013, medical records indicating an added diagnosis of lumbar disc syndrome. The commission noted these references were only 15 days post-accident, and you're saying that's not true? There is a reference in the January 24 office note to disc syndrome. There's still no mention of a back injury. What about what happened on January 14, 2013? Where did the commission get the idea there was a neck or back injury referenced in the history section? That's this document here, and that's why this is crucial. What is this document? Well, the teller is right at the top of the health history. Is this an accident form? Do they ask what happened on January 9? No. Nowhere in this document do they ask that. Do they ask, what did you hurt on January 9, 2013? Nothing like that. It's not asked. Asked medical history, which is exactly what this document says. It's in English and Spanish, so this gentleman understands what it says. I've had diabetes in relatives. I've had major illnesses. I've had shortness of breath. I've had asthma. I've had alcoholism, depression. All these things are checked because it's past medical history. Just like the document says, we want to be able to treat you, so tell us what you've had in the past. And he says, yeah, I've had foot problems in the past. I've had joint pain in the past. I've had neck or back injury in the past. Now, what the commission mistakenly did is interpret this to be an accident report form, and they said, well, gee, just because we've checked the box for back injury as a past medical problem, we're going to interpret that to be he injured his back on January 9, and nothing could be further from the truth. That's why this document is crucial. They say that this is an accident report form, and they cite it conspicuously in their... Well, how do you know what the claimant was thinking? How do you know what the claimant was thinking when he checked those boxes? How do you know what he was thinking? Well, I don't know what he was thinking. I'm just looking at the plain language of the form. Okay, but you've got to go through it. And where does it say past for back and back? Right here. Right here. Why does it say past? Well, all of these are past. Well, no. In the upper left, it says past medical history, but on the right it doesn't. Well, all of these. Nowhere does it say contemporaneous or what do you have now. It doesn't ask what do you have now. All of this is past. You keep saying all of this says past, but it doesn't. It just says on the upper left-hand side in bold capital letters past medical history, but then below that in bold capital letters it says family history, and then it says review of systems. So what are you saying this claimant is supposed to glean from that to be able to then reach the conclusion that for neck or back injury that means past? Well, it says past the matter of how you look at it. It doesn't say anything about now. See, actually the first one says what day did you hurt yourself, what were you doing, and what part of the body hurts. Nowhere does it say what part of the body hurts now. It doesn't answer that. Yeah, but your problem is an interpretation. With all due respect, I don't see that as a definitive smoking gun that you think it is, because as we're asking you these questions, it should be obvious this is subject to interpretation. You're saying it's as clear as day what the claimant was filling out, and he knew what he was filling out. I don't think that's the case. The interpretation would be, well, the opposite interpretation would be that on January 9th, this gentleman had foot problems and alcoholism and depression, and he had to have a shortness of breath, so he checked all those boxes. Of course, that's not the case. Let me ask this question on that last category. Have you had or do you commonly have, and then we have a series of arguably subheadings, correct? Going down. Okay. And then it proceeds over to the right. Is that correct? Yeah. Okay. Proceeds to the right. And what is the line there that you're having issue with? Line 63. And it says. Yeah, but what does that line say? I'm sorry. It says neck or back injury. Okay. Now, did the injury proceed filling out this form? We don't know. Well, you do know. What's the date of this form? The date of the form is January 14th, 2013. And when was the alleged incident? The alleged incident is January 9th. Which was prior, so he had. Right. And if you read this. In time. And if you read this with all the other medical records, see, there's an office note that says January 14th, 2013, which is when he walked in and said groin, hamstring. According to your document, back problems. Back problems, asthma, and all sorts of stuff. Well, back problems is back problems, right? Well. Which is after the accident. Yeah. But where does it say right now? It doesn't. Right now would be as he's. The right now form is the office note of January 14th, 2013, where he walks in and says groin pain, hamstring pain, and that's all. And then they give you this form that says what's your past medical history? Maybe he thought that four days earlier was past medical history. He has back problems. Well, then he would have said to his treated medical doctors on January 14th, January 17th, January 18th, hey, by the way, my back hurts. And there's nothing in the record that says that. If you read the two together. See, what the commission did is they held up the office notes that said January 14th, 2013, and it said groin pain, hamstring pain, and he said, well, we're going to forget about that. We're just going to interpret this document to be an accident report. I'm saying that's incorrect because it's not an accident report. It doesn't say accident report. It says health history. We'll decide the way to that, but let me ask you a very pointed question. Sure. Didn't the commission find the claimants to be credible in his testing? Well, I don't know if there's a specific determination whether he's credible or not credible. What the commission has done on numerous occasions and what this court has done is when. The commission further finds petitioner's testimony credible. Now, how do you get around that? Be fair here. It says that, doesn't it? Sure. The commission has. So my question is did they find him to be credible, yes or no? Well, if the decision says credible, then apparently that's a fine thing to do. It's an easy question. Right. So you have the petitioner testifying directly contrary to his treating medical records. This document, the January 14, 2013 office note, he's testifying directly contrary to the January 17th. And they know that because you pointed that out, right? Okay. But what this commission has done and this department has said on numerous occasions, the prepared testimony 21 months later in this case is not as credible as the initial treating medical records. And that's what you have here. Do you have the case where we said that? Do you have it at your fingertips? Which case? Not the prepared test, but it's pretty clear. And what your argument to kind of just circumscribe it is that the contemporary medical records are in contravention of his testimony. And that there's a time, a great gap in time between both. And that contemporary concurrent documents purporting to say what these injuries are and the mechanism of injury should be given more weight than the oral testimony up here. Is that it? Right. The initial treating medical records are entitled to weight. Yes, there are questions about it, right? That's right. And what the commission did mistakenly is they said we're going to toss that out. We're not going to give that anyway because it's contrary to what this says. We're going to take his past medical history form where he lists all of his past problems. And we're going to interpret that to mean, well, gee, he must have hurt his back on January 9th because he said, I've heard it in the past. Well, did he have asthma on January 9th? Of course not. Was he hospitalized? Did he have a blood transfusion on January 9th? Did he have a foot problem on January 9th? No, of course not. There's not a lot to read into this document. It is what it is. It is exactly what it says it is. It is a health history form because that's exactly what it says. It asks for past medical history because that's exactly what it says. Now, is the basis of the credibility finding for the claimant entirely based on this? Well, counsel, this brief gives other reasons. Because you're probably thinking the same thing I am. You're saying, well, this is all interesting, counsel, but we can understand this. There must be other reasons why the commission held what they did. One of the things that counsel brought up was the Heron Medical Center. The gentleman goes to Heron Medical Center 60 days later, and he says, my back hurts. I hurt my back January 9th, 2013, and it's been hurting. It's been severe pain ever since. Obviously, that's directly contrary to what he told the U.S. Health Force. And what the commission and what the appellee is telling you is that this gentleman had a herniated disc, which was severely painful and symptomatic, and he went to practicing treating physicians on three separate occasions, and they failed to diagnose him, or they refused to write down the symptom. And that theory is improbable. The opposite conclusion is clearly apparent. It's not improbable. I'm sorry. It's not improbable. No. Sixty days later, he goes to another medical provider that he selects after his employment with the appellate is terminated, and his history changes. Now, two months later, he's complaining about a completely different part of the body. Let me ask you this. Respondent had an expert, right? Dr. Neal, that's correct. Was the commission accurate or inaccurate in this statement, in this decision? Respondent's expert testified that he found the petitioner credible. Well, I believe Dr. Neal found the petitioner credible, but Dr. Neal said in all certain terms he did not injure his back January 9th. So if you take a look at Dr. Neal's opinion, Dr. Neal clearly says that. Does he say that the petitioner is a liar? No, he doesn't say that. So that statement in isolation, yes, I believe Dr. Neal said that. I was clear of the fact. Did the commission, was there evidence that the claimant's MRI of March 18th, 2013 revealed an anionic tear? I think it said 2 to 3 millimeter and it had an annular tear, protrusion, herniation. It was at the L5 level of March 18th. That's correct. So that's not consistent with the back injury? Well, it's not inconsistent, but again, keep in mind that there was one in October, October 16th, 2013, page 201 of the record. That was clean. Now that was a CT with contrast. And a CT with contrast is a little more exact than an MRI where if you've seen the MRI filter, maybe you have, but you've got to have a radiologist very well trained to pick out what's there. So you've got these two radiographic tests. You've got the MRI, which you correctly pointed out, March 18th, 2013, and it says, well, wait a minute, I think this guy has some pathology at the L5 level. And then in October 16th, later obviously, they do the CT with the contrast, clean, no annular tear. Now, the record doesn't have any expert explaining that. There's only one doctor who testified, and that's Dr. Neal. Petitioner's counsel did not go out and get an expert or have a treater give a causal connection opinion. There's no petitioner's doctor who would have caused a connection opinion here. It's all the commission saying, this is an accident report dated January 14th. This is not an accident report dated January 14th. That's why this isn't important, because this is a health history thing. Well, what should we do? Well, my plan A, of course, the arbitrator got it right. The arbitrator looked at the same record that you handed. The arbitrator said he injured his groin or he injured his hamstring. How do we know? Because that's what he told us. Restate the decision of the arbitrator. The arbitrator got it right. The arbitrator said this is a health history form, because that's what it says at the top. He agreed to it, but it wasn't there. At the very least, this is plan B. I'd rather that you just reinstate the arbitrator's decision. But plan B, tell the commission that this is a health history form. It's not an accident report form. Do we make findings of that? I'm sorry? Do we have the authority to do that? Do we make a finding of that as to what that is? How do we do that? I think you can send it back, remand it back to the commission. Tell them that this document is a health form? Yeah, pursue them to your instructions. They have to issue an opinion consistent with your direction. I think you can remand it back and say that they're finding the fact that this is an accident report form and that this document conclusively proves that he injured his left hamstring or he not injured it is against the manifest way of the evidence. The opposite conclusion is clearly apparent. Well, if you want to do that, it's fine with me. Just reinstate the arbitrator's decision, which is what should be done anyway. The opposite conclusion is clearly apparent. What's the sufficient evidence that supports the commission's decision? The commission said, this general judge is back January 9th. Well, what's the sufficient evidence that supports that? Once you take this out of the equation, the commission's decision collapses like a house of cards. They have nothing else left. You mentioned that March MRI. Okay, he's got an MRI from March that says he might have discothel. But he went to the doctor and didn't say anything. It was apparently asymptomatic. Unless you want to prove, you want to adopt this crazy theory that he walked in and on three separate occasions treating doctors misdiagnosed him. That's not the case. If this gentleman had a herniated disc on January 14th, 2013, the doctors would have found it. They're experienced, treated physicians, worry about malpractice just like all doctors are. I think you'll have time in reply. Okay. Okay, thank you. Thank you. Good morning. Good morning. Mr. Lukey, my name is Gary Friedman. I represent Mr. Santiago. I listened to counsel's eminent dissertation, but he must have been reading a different transcript because Mr. Santiago, a relatively young man, testified unequivocally that from day one his back was bothering him. And if you read the transcript of Mr. Santiago's testimony, he will tell you that he noticed a problem with his back. It's interesting that counsel would like to rely on the company clinic records, but I think we can all appreciate, counsel should appreciate the fact that the commission, unlike other situations that I've been involved in, spent a significant amount of time going through the medical records so that they could correct the strange decision of arbitrator Williams. This was a 19B hearing. Arbitrator Williams said hip and groin was causally related, but then went on to say you're not entitled to any benefits, and he dismissed the whole case. How do you dismiss a 19B when you've already found causal connection between two parts of the body? I mean, again, it's a very strange decision, but fortunately for me and for you, the commission spent a significant amount of time sorting it out and getting it right. How do you respond to that? His central theme is that document is definitive. It totally and completely impeaches the claimant, and therefore relying on that, it's against the manifest way of the evidence. He points to that as the definitive item of proof in this case. That's why I agreed to let this be presented to you, because, again, it specifically says right up here, past medical history. And then down here, it's different. This isn't, here's the past medical history. In my judgment, and I think I'm pretty sure it was from time to time, but even though he's had dyspnea and speaks dyspnea, it looks to me like it may be interpretive for him, that he's telling them what his current symptoms are, because it says review of symptoms. It doesn't say review of prior symptoms or prior history, and I've been told that in box 63, because his symptoms at that time was a neck and neck injury. They wanted Mr. Santiago to rely on their company clinic records, who failed to note on the first few days that he was complaining of a back injury. He testified, and if you read his testimony, he says that he told them that his back was bothering him. And interestingly enough, they then argue that 10 days later, their records changed because it says for sure that they were concerned about his back injury. Their diagnosis was lumbar displacement along with the right hip and the thigh. So, I mean, again, for them to argue that he did hurt his back on January 9th, you want to rely on part of the company clinic records, but you don't want to rely on the other part of the company clinic records. The interesting thing, and again, when you talk about credibility, which the commission relied upon, when Dr. Neal examined Mr. Santiago on June 4th, 2013, in his original report, he said he noted pain in the lower back, the right buttock, the right thigh, and numbness in the posterior right thigh. He also noted, and by that time, because of the fact that he wasn't improving, he was limping and using a cane, Dr. Neal and the commission relied upon their own IME doctor who said there is absolutely no prior history of lower back or problems. He was average or above credibility. He was not demonstrating secondary gain. And was not a malingerer. He was not exaggerating. And I believe Mr. Santiago was in pain. How many times do you see that from an IME physician? Most of the time from an IME physician, he's either malingering or he has flat L signs or he's not creditable. Their own doctor. Somehow, later in time, in December of 2013, apparently at the request of someone, the doctor rendered an addendum report. No re-exam. In that report, he says it's the same diagnosis, but now all of a sudden it's not related to the employment accident of January 9th. On cross-examination, though, and the commission relied upon this, the doctor said that he relied on an erroneous note in the company clinic records, something about three months rather than three weeks. But again, in his cross-examination, Dr. Neal admitted there was absolutely no record of any prior lower back complaints. He said the MRI was abnormal, with an amulet tear, with an extrusion of herniation. What do you make about that? He points to a test later on, six, seven months later, that disputes the initial MRI. What do you make of that? That's interesting because the commission pointed that out. It was a CT scan done on 10-16-13, and the commission said it only dealt with L2, L3, L3. No. It dealt with L2-L3. It dealt with L3-L4, L4-L5. And the commission pointed out that CT did not reference a report on L5-S1, which is the point where the MRI showed. So his argument that it directly contradicts the earlier one is inaccurate, right? I'm sorry? His point that that directly contradicts the earlier one is not correct. That does not contradict it because it did not deal with that level. And if you look at the commission, they pointed that out. Specifically. Okay. The commission correctly relates that the MRI of 3-18-13 noted an amulet tear and disinjury. In fact, Dr. Neal further opined on cross-examination that there was a positive discogram at L5-S1. But the interesting thing also, when you take into consideration the totality of the petitioner's testimony and why he's so credible, he had never missed a day from work before this accident happened. The uncontradicted testimony was he had never had any prior back care or treatment. He had never had a prior back injury. I mean, again, the commission's decision in finding that his lower back condition was causally related to the January 9, 2013 accident is on all fours. The record supports the fact that he was off during the period of time, keeping in mind the fact that the employer was very nice. While he was treating at the company clinic, they fired him on January 21, 2013. So again, the commission awarded 91 and 4-7 weeks of TPD up to the date of the hearing. And because the commission agreed with the medical records and the testimony of the petitioner that his back was getting worse and worse, he was living. He was using a cane, therapy, medication. Everything they tried at the clinics that he was going to did not help him. They agreed that this gentleman needed surgical repair, and they ordered the respondent or the appellant in this case to authorize and pay for the surgery. So in conclusion, I would ask that you would affirm the commission's decision so that Mr. Santiago can get his care and treatment, move on and get his benefits and get better. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. Well, there are a number of items that are outside of the record. I'll limit my comments to what's in the record. Yeah, this is the CT scan that you referenced. It's dated October 16, 2013. It's on page 201 of the record, and they both comment about L5. Now, maybe there's a difference in interpretation, and maybe counsel should have a radiologist or maybe even the treating doctor say, is this inconsistent? Other than that, all we can do is guess because no one in this room is a medical doctor. Yeah, but didn't you represent it was inconsistent with the earlier MRI? Didn't you say that it was? Well, I simply said that this showed it clean, and they both say L5. Now, counsel is telling you that L5 S1 is different than L5. I'm saying that the radiologists all rate them the same way. L5 is L5. Who's doctor is it? Amber Dulles? That is a pain physician. His records are in the medical records that are part of the court record. He is a pain physician. He is not a surgeon. He saw a physician on January 9. Did he review the same CT scan that was done? I'm sorry? Didn't he review that later CT scan on October 29? You may have seen both of them. In order that it was positive? Well, the March one would have been. Certainly, the October one would not be positive. The radiologist clearly says negative for annular tear, L2, L3, L3, L4, L4, L5. The report says what the report says. It says negative for annular tear, L5. Now, sometimes these protrusions heal up, but not on the outside of the record. And, again, there's a favor of approval. Petitioner did not have any of the treating doctors testify. Well, back to that last point, Justice Hudson's, Dr. Abdullah Teef, or Teef. The commission says reviewed that October CT scan and noted it was positive on L4, L5, L5, SI. That's one. Okay. But noted it was positive on L4, L5. All I can say is I am referring to page 201 of the record, which has the report, and the report itself says negative for annular tear at all levels. Now, Dr. Abdullah Teef may have his own motives. I'm not sure what they might be. Well, that's a problem for you because you're opining that the opposite conclusion is clearly apparent, and yet there's obviously some contradictory evidence, isn't there? Well, no one has linked up the radiographic findings to this particular incident. Dr. Abdullah Teef has not. Dr. Abdullah Teef does not have a causal connection opinion. So Dr. Abdullah Teef is not causing me any kind of problems. What about the claimant's testimony? Doesn't that count? The claimant's testimony? Yes. And counsel mentioned what the petitioner testified to, and that lays out the issue. You have the petitioner testify 21 months later saying, I injured my back jamb where I died and it's been killing me ever since, which is directly contrary to what he told the treating doctors. And if you take a look at the autopsy report. Well, back to your charge, right? No, no, not back to the charge. The January 14 office note is not this document. The January 14 and January 17 and January 18 office notes clearly say no back complaints, nothing. There's hamstring groin. And the more the petitioner embellishes his testimony, the less credible he becomes because now they're just inconsistent. When you have him going in and seeing, practicing, treating physicians, and then trying to tell us, well, wait a minute, months later now my back hurts. And that's the problem with his testimony. He's testifying months later, now I have problems to a different part of the body. Okay. And they don't have a physician looking at it. Thank you very much. Thank you, counsel, both of the arguments in this matter have been taken to advisement and a written disposition shall issue.